UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**VICTOR OTERO,**

        **Petitioner,**

vs.                                        Case No. 8:04-CV-1403-T-27MSS
                                                  Crim Case No. 8:02-CR-442-T-27MSS

**UNITED STATES OF AMERICA,**

        **Respondent.**
_____/

## ORDER

**BEFORE THE COURT** is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 1), the Government's Response in Opposition (Dkt. 6) and Petitioner's Reply (Dkt. 7). Upon consideration, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. 1) is DENIED.

Petitioner was indicted and charged with possessing with intent to distribute and conspiring to possess with intent to distribute more than five (5) kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States. (CR Dkt. 1). Pursuant to a written plea agreement, Petitioner pleaded guilty to Count One. (CR Dkts. 66, 79, 143). On June 20, 2003, Petitioner was sentenced to 135 months imprisonment, to be followed by 60 months of supervised release. (CR Dkt. 113). Petitioner did not appeal. The instant § 2255 motion to vacate is timely.

*Ground One: "Conviction obtained by a plea of guilty which was not made with the understanding of the nature of the charges and the consequences of the plea."*

This contention is plainly refuted by the record. Petitioner pleaded guilty pursuant to a written Plea Agreement which set forth, among other things, the specific charges to which he was

pleading guilty, the penalties prescribed by statute, the constitutional rights he was waiving by pleading guilty, including his right to appeal or seek collateral relief and the impact of the sentencing guidelines. (CR Dkt. 66). During Petitioner's change of plea hearing, the Magistrate Judge conducted an appropriate Rule 11 colloquy, expressly reviewing the terms of his plea agreement, the nature of the charges to which he was pleading guilty, the statutory maximum penalty and the applicable minimum mandatory ten year sentence, and the constitutional rights he was waiving, including his right to appeal or seek collateral relief, all of which Petitioner expressly acknowledged that he understood. (CR Dkt. 143, pp. 15-16, 23-24, 28). Moreover, to the extent Petitioner now claims that his attorney advised him that he would not receive more than ten years, that contention is likewise refuted by Petitioner's own statements, made under oath, in response to the judge's questions. He expressed his satisfaction with counsel, acknowledged discussing the sentencing guidelines with his attorney, acknowledged that he could not rely on any predictions made by his attorney and that no promises had been made to him other than what was in his plea agreement. (CR Dkt. 143, pp. 12, 14, 25-26).

Moreover, Petitioner expressly acknowledged, under oath, that no one told him that they could tell him precisely what his sentence would be if he entered a guilty plea. (CR Dkt. 143, p. 26). Most significantly, after that exchange, and immediately after having explained the statutory maximum penalties, including the applicable minimum mandatory ten year sentence, the Magistrate Judge asked if Petitioner had any questions about his plea agreement or the consequences of his guilty plea and whether he needed any additional time to speak with his attorney. Petitioner had no questions and declined the opportunity to consult with counsel. (CR Dkt. 143, pp. 30-31).

Petitioner's claim that his guilty plea was not knowingly entered with an understanding of the consequences of his plea is facially without merit. He will not be heard to disavow the sworn statements he made during his Rule 11 colloquy. *United States v. Stitzer*, 785 F.2d 1506, 1514. n. 4 (11th Cir.), *cert denied*, 479 U.S. 823 (1986).

### *Ground Two: "Improper Sentence"*

In this ground, Petitioner essentially complains that he did not receive a mitigating role reduction, contending that he was a "minor participant in the offense, his conduct demonstrated minimal participation, and he was prompt in accepting responsibility and provide his cooperation with the government." Ground Two is not a constitutional claim and is not therefore cognizable in a § 2255 proceeding. Recourse under § 2255 is reserved to claims of constitutional dimension and for those claims that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 184 (1979).

Moreover, by virtue of his appeal waiver, which was fully explained to Petitioner by the Magistrate Judge during his plea hearing, this claim has been waived. Petitioner was specifically questioned during his plea hearing about his appeal waiver and he acknowledged his understanding of same. (CR Dkt. 143, pp. 23-24). Petitioner's appeal waiver was knowingly and voluntarily made. *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993).

### *Ground Three: "Denial of effective assistance of counsel."*

Petitioner's claim that his attorney was ineffective for not explaining the consequences of his guilty plea, including the possible length of his sentence and for not "properly" arguing mitigating circumstances is without merit. To the extent Petitioner claims that his attorney was ineffective during the sentencing hearing, he has waived the right to collaterally attack his sentence on that ground by virtue of his appeal waiver. *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001).

If his appeal waiver did not waive the right to raise this claim, his claims of ineffective assistance are without merit. In his Rule 11 colloquy, Petitioner expressly acknowledged that he was satisfied with counsel's representation. (CR Dkt. 143, pp. 1-12). He acknowledged that his attorney discussed the sentencing guidelines with him. *(Id.* at p. 14). The Magistrate Judge explained the statutory maximum sentence he faced, including the applicable ten year minimum mandatory sentence. (*Id.* at p. 28). Petitioner's plea agreement expressly addressed these consequences as well. (CR Dkt. 66). Given these circumstances, and particularly Petitioner's sworn statements that he was satisfied with counsel's representation, his contention that his attorney was ineffective is discredited. *United States v. Freixas*, 332 F.3d 1314, 1319 (11th Cir. 2003); *United States v. Ross*, 147 Fed.Appx. 936 (11th Cir. 2005)(allegations that counsel was ineffective which are contrary to defendant's sworn statements at plea hearing may be discredited).

There is a strong presumption that Petitioner's sworn statements made during his plea hearing are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Petitioner accordingly "bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). Given the strong presumption of verity accorded Petitioner's sworn statements during his plea hearing, his conclusory allegation of ineffective assistance of counsel, unsupported by specifics, is subject to summary dismissal, as are his contentions that are wholly incredible in the face of the record. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Petitioner's contention that counsel did not "properly" argue for a mitigating role adjustment is patently frivolous. The sentencing transcript confirms that Petitioner's counsel made an appropriate, albeit unsuccessful, argument in favor of a mitigating role adjustment under U.S.S.G. § 3B1.1. (CR Dkt. 179, pp. 3-5, 7). Counsel's performance cannot be said to have been deficient

under *Strickland v. Washington*, 466 U.S. 668 (1984). It did not fall below an objective standard of reasonable professional assistance. Review of counsel's performance must be "highly deferential" and the court must avoid "second-guessing counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000)(*en banc*), *cert. denied*, 531 U.S. 1204 (2001).

Moreover, Petitioner cannot show prejudice, even if counsel's argument could be said to have been deficient. The District Court acknowledged counsel's argument as "legitimate." However, in light of prevailing Eleventh Circuit precedent, the Court found that the undisputed facts did not warrant a mitigating role adjustment. (CR Dkt. 179, pp. 7-9). Simply put, there was nothing more counsel could have done, based on the undisputed facts. Those facts did not, in the judgment of the Court, warrant a mitigating role adjustment. No prejudice can be shown.

### *Ground Four: Denial of Right of Appeal*

In Ground Four, Petitioner alleges that "immediately following the imposition of sentence, I made a request to my defence [sic] attorney to file an appeal on the length of the sentence on my behalf. Although my attorney stated that he saw no need to appeal, I insisted that he filed [sic] an appeal on my behalf." Consistent with *Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005), an evidentiary hearing was conducted on September 26, 2006, limited to Petitioner's claim that counsel failed to comply with his specific request to file a notice of appeal in his criminal case. (CV Dkt. 10). Petitioner was appointed counsel for the evidentiary hearing. On consideration, Petitioner's testimony that he directed his attorney to appeal is not credible.

In the underlying criminal case, Petitioner, who does not speak English, was represented by Thomas Ostrander, Esq. under the Criminal Justice Act. Consistent with the contentions made in his §2255 motion, Petitioner testified that he asked Ostrander to appeal immediately after sentence

was imposed and again after he was transported from Tampa to Punta Gorda. However, Petitioner now acknowledges that he never spoke with Ostrander personally in this regard. Rather, Petitioner testified that immediately after sentence was imposed, he told the court interpreter to tell Ostrander he wanted to appeal. He recalls the interpreter speaking with Ostrander, but because Petitioner does not understand English, he did not know what the interpreter told Ostrander.

Pedro Marino, a certified federal Spanish interpreter, testified. Although he did not specifically recall serving as an interpreter in Petitioner's case, he did recognize Petitioner. He is familiar with attorney Ostrander, having worked with him on numerous occasions. Marino's routine practice, consistent with his ethics, was to convey everything that a client said to the client's attorney. With respect to a request to appeal, he considers that to be a "very important" subject which he would always communicate to the defense lawyer. According to Marino, he would never fail to communicate to an attorney a client's request that the attorney pursue an appeal.

Attorney Ostrander testified that before sentencing, he explained to Petitioner that if his sentence was within the (then) mandatory guideline range of 135-168 months, the sentence would be a legal sentence and Petitioner would not have a viable appeal, in light of the appeal waiver clause in his plea agreement. He recalled that Petitioner nodded, confirming his agreement and understanding. Ostrander also explained to Petitioner that he intended to ask for a minor role adjustment and if that request was granted, Petitioner's sentence would be substantially less than the 135-168 month guideline range. Ostrander correctly recalled that the Court overruled his objection to lack of a minor role adjustment. Since the Court's sentence of 135 months was at the low end of the mandatory guideline range, Ostrander did not discuss Petitioner's right to appeal after sentence was imposed, based on his earlier conversations with Petitioner.

Petitioner's credibility was substantially undermined by Ostrander's testimony. Contrary to Petitioner's testimony that Ostrander met with him only three times before he was sentenced, Ostrander documented six conferences with Petitioner, excluding court appearances. On three of those occasions, he discussed Petitioner's appellate rights. When he reviewed the appeal waiver clause with Petitioner, the interpreter assisting Ostrander read each paragraph to the Petitioner, after which Petitioner nodded, confirming his understanding. Ostrander reviewed the appeal waiver clause with Petitioner and the four exceptions to the appeal waiver. This was consistent with Ostrander's routine practice when a client enters into a plea agreement containing an appeal waiver clause. Given Ostrander's explicit recollection of those three conferences with Petitioner during which Petitioner's appeal waiver clause was discussed, and his specific recollection of having explained to Petitioner that a sentence within the guideline range would not present a viable appeal, Ostrander fulfilled his duty of discussing the advantages and disadvantages of an appeal with Petitioner.

It is inconceivable and therefore not credible that Ostrander disregarded a specific request by Petitioner through the interpreter to file an appeal after sentence was imposed. As Ostrander opined, he would have had no reason not to perfect an appeal if Petitioner had indicated a desire to appeal. Moreover, given interpreter Marino's experience and certification as a federal Spanish interpreter, his routine procedure and the ethics which mandated that he communicate any such request to the attorney, Petitioner's testimony that he told Marino to instruct Ostrander to file an appeal is not credible. In short, Marino likewise would have had no reason not to communicate such a request to Ostrander.

Other circumstances alluded to during the hearing corroborate the Court's finding that Petitioner is not credible. As noted, Petitioner insisted that he asked Ostrander to appeal but acknowledges that he never spoke with him personally or with anyone in Ostrander's office. Petitioner testified that he called Ostrander's office but only got an answering machine. Contrary to Petitioner's testimony, Ostrander explained that he had a 24 hour answering service which had been instructed to accept all collect calls. His office had likewise been instructed to accept all collect calls. He had a full time secretary at the time. No one ever relayed to him that Petitioner had called.

While Petitioner testified that he wrote a letter from Punta Gorda to Ostrander requesting him to appeal, Ostrander, who had his file with him at the hearing, received no such letter. The two letters Ostrander did receive, introduced as Government's Exhibits 1 and 2, were sent by Petitioner via certified mail and had nothing to do with a request for an appeal. Ostrander responded to Petitioner's May 30, 2004 correspondence requesting copies of documents, furnishing Petitioner with the requested documents. He acknowledged that he did not respond to Petitioner's June 28, 2004 letter requesting that he discuss a Rule 35 motion with the Government, fearing that his response would be read by other inmates, thereby placing Petitioner in peril.

In light of Petitioner's use of certified return mail on the two letters received by Ostrander, and Ostrander's actions after receiving the two letters he did receive from Petitioner, Ostrander's testimony that he never received a letter from Petitioner requesting him to appeal is credible. That Petitioner's two letters made no reference to an appeal likewise corroborates this Court's finding that Petitioner never wrote to Ostrander requesting an appeal as he testified and never asked the interpreter to tell Ostrander to appeal. As Ostrander testified, he would have filed a notice of appeal if he had been asked to do so, regardless of the appeal waiver. Considering all of these circumstances, Petitioner's testimony cannot be accepted as credible.

Attorney Ostrander consulted with Petitioner regarding the advantages and disadvantages of filing an appeal when he explained the appeal waiver clause in Petitioner's plea agreement on three separate occasions. Likewise, prior to sentencing, Ostrander again effectively discussed with Petitioner the "advantages and disadvantages of appealing" when he explained to Petitioner that a sentence within the mandatory guideline range would not present him with a viable appeal. Given Petitioner's understanding and agreement with Ostrander's explanation, Ostrander's consultation satisfies the requisite "reasonable effort to determine the client's wishes." *Roe v. Flores-Ortega,* 528 U.S. 470, 478 (2000). Ostrander fulfilled his duty to explain the advantages and disadvantages of appealing in the event a guideline sentence was imposed and determined his client's wishes prior to the sentencing hearing.

It is well settled that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner. *Gomez-Diaz,* supra at p. 792. However, where as here, the Petitioner did not specifically request that the attorney file an appeal, the attorney has not rendered ineffective assistance of counsel. Ostrander could not have ignored Petitioner's desire to appeal the case, as he was never specifically requested to appeal by Petitioner. Ostrander's performance therefore met "an objective standard of reasonableness" under *Strickland*.

Prior to sentencing, Petitioner agreed with Ostrander that no viable appeal would be available if a sentence within the guideline range was imposed. The Court imposed a sentence within the mandatory guideline range. Consistent with Ostrander's advice, considering the appeal waiver clause in Petitioner's plea agreement, no viable appeal was available to Petitioner. After sentencing, Petitioner expressed no interest in appealing. Ostrander correctly concluded that there were no non-frivolous grounds for appeal. Under these circumstances, "it would be difficult to say that counsel

[was] 'professionally unreasonable.'" *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000), citing *Strickland*, 466 U.S. at 691. Where, as here, counsel consults with the defendant concerning his appellate rights, counsel performs "in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Roe v. Flores-Ortega*, 528 U.S. at 478.

After sentence was imposed, the Court advised Petitioner of his limited appellate rights, consistent with his plea agreement. That Ostrander did not consult with Petitioner following imposition of sentence does not mitigate against a finding of reasonable and non-deficient performance. Given Ostrander's consultation with Petitioner immediately prior to sentencing, it was not necessary that he again review Petitioner's appellate rights. *See Roe v. Flores-Ortega*, 528 U.S. at 479-80 (rejecting a brightline rule that counsel must always consult with the defendant regarding an appeal). Ostrander fairly concluded that Petitioner, acting rationally, did not want to appeal since the Court imposed a sentence at the low end of the (then) mandatory guideline range. This is not a case, therefore, in which counsel neglected to consult with the client about the client's appellate rights or disregarded a specific request that counsel file an appeal. Therefore, it is

**ORDERED AND ADJUDGED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) is DENIED. All pending motions are denied as moot. The clerk is directed to enter judgment against Petitioner and close this case.

**DONE AND ORDERED** in chambers this 20th day of October, 2006.

/s/ James D. Whittemore
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Petitioner/pro se
Counsel of Record